# 99 DTA 109

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA
### PANEL I

JAVIER LOPEZ MARQUEZ
Apelado

v.

RADIO COMMUNICATION SERVICE AND
DMC HEAVY EQUIPMENT CORP.
Apelantes

Núm. KLAN-97-00832

San Juan, Puerto Rico, a 17 de marzo de 1999

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Pesante Martínez

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

### I

La parte apelante Radio Communication Service and DMC Heavy Equipment, Corp. *("Radio Communication")* recurre de una sentencia emitida el 19 de junio de 1997 por el Tribunal de Primera Instancia, Sala Superior de Humacao. Mediante el dictamen en cuestión, el Tribunal declaró con lugar una demanda de retracto de colindantes presentada contra la apelante por el apelado Javier López Márquez, relacionada a una parcela localizada en el Barrio Collores del Municipio de Las Piedras que había sido adquirida por la apelante.

El Tribunal resolvió que el apelado tenía derecho a adquirir dicha propiedad y emitió un interdicto ordenándole a la apelante abstenerse de edificar, enajenar o de otra forma ejercer actos de dominio sobre la propiedad. El Tribunal ordenó la remoción de las edificaciones construidas en dicho predio por la apelante. La sentencia también decretó la nulidad de una agrupación de terreno llevada a cabo por la apelante y le impuso honorarios de abogado de $10,000.00 a la apelante, por temeridad.

Confirmamos.

### II

La apelante Radio Communication es una corporación con fines de lucro organizada bajo las leyes del Estado Libre Asociado de Puerto Rico y dedicada, entre otras cosas, al negocio de las comunicaciones. Para la fecha relevante a la presente controversia la dueña y principal accionista de la apelante lo era la Sra. Aida L. Martínez García.

El litigio de autos gira en torno al retracto de la siguiente propiedad, sita en el Barrio Collores del Municipio de Las Piedras, adquirida por Radio Communication.

*"--RUSTICA: Lote de terreno localizado en el Barrio Collores del término municipal de Las Piedras, Puerto*

*Rico, rotulado con el Número Siete A (7A) en plano de inscripción; con una cabida superficial de Mil Quinientos Setenta y Siete (1,577) Metros Cuadrados, equivalente a Cero Punto Cuatro Mil Doce (0.4012) Cuerdas, en lindes por el Norte, con la parcela dedicada a uso público marcada con la letra "B" en el plano de inscripción, distancia de cuarenta y ocho punto trescientos veinticinco (48.325) metros; por el Sur y Oeste, con el remanente de la finca principal de la cual se segrega, distancias de treinta punto cero veintiuno (30.021) metros y cuarenta y dos punto quinientos (42.500) metros; y por el Este, con terrenos propiedad de don Ramón Alicea Delgado, antes, hoy Javier López Márquez, distancias de cuarenta y dos punto ochocientos cincuenta y seis (42.856) metros y cuatro punto cuatrocientos noventa y cinco (4.495) metros."*

Para la fecha relevante a la presente controversia dicha propiedad pertenecía al Sr. Cosme Alicea Mercado y a su esposa, Carmen Viera.

Según el testimonio del Sr. Cosme Alicea durante el juicio, la finca era parte de una finca mayor que había pertenecido a su padre, quien había dedicado la misma a fines agrícolas, mayormente para la cría de ganado. La finca tenía una zonificación de Agrícola A-3 y estaba comprendida en el área de zonificación especial para municipios circundantes al Yunque.

El 29 de julio de 1994, los esposos Alicea Viera otorgaron un contrato privado de compraventa a favor de José M. Díaz Rodríguez y Aida L. Martínez García para la venta de un solar de 1,611.46 metros que supuestamente correspondía al predio antes mencionado. Según surge del expediente, el propósito de la transacción era el arrendamiento de dicho terreno a la Puerto Rico Telephone Company por la parte apelante para la construcción de una torre y facilidades de telecomunicaciones para teléfonos celulares. No obstante, aunque para esta fecha la corporación Radio Communication existía, la misma no compareció en el negocio, sino que el mismo fue otorgado por los esposos Díaz Martínez en su carácter personal.

El contrato establecía que *"la parte Vendedora le vende a la parte Compradora el solar antes indicado bajo las siguientes condiciones:*

*"a. Que la compraventa de dicho solar se realiza por el acordado y justo precio de Catorce mil dólares de los cuales se ha hecho entrega con anterioridad a este contrato de la cantidad de Cinco mil dólares,...*

*b. Que Cinco mil dólares adicionales se entregarán una vez el Agrimensor Sr. Daniel Rosario Díaz marque los puntos debidamente en el terreno del solar de compraventa.*

*c. Una vez que la Junta de Administración y Reglamento de Permisos apruebe el plano de segregación se le procederán a pagar los cuatro mil dólares".*

Según su testimonio, el Sr. Cosme Alicea entendía que él continuaba siendo el dueño de la propiedad hasta que se aprobara la segregación del mismo y le pagaran la totalidad del precio.

Los esposos Díaz Martínez contrataron al agrimensor Daniel Rosario Díaz para llevar a cabo las gestiones para obtener el permiso de segregación de la propiedad, cosa que éste realizó posteriormente.

El 10 de julio de 1995, por vía de la Escritura Pública Número Ochenta y Nueve (89) otorgada en Las Piedras ante el notario Margaro Rivera Guzmán, el apelado Javier López Márquez adquirió la siguiente propiedad rústica sita en el Barrio Collores:

*"--RUSTICA: -Predio de terreno radicado en el Barrio Collores del término municipal de Las Piedras,*

*Puerto Rico, identificado como LOTE NUMERO SEIS (6) en el Plano de inscripción, con una cabida de SIETE MIL CUARENTA Y DOS METROS CON CUARENTA CENTIMETROS CUADRADOS (7,042.40 M.C.), equivalentes a UNA CUERDA CON SETENTA Y NUEVE CENTESIMAS DE OTRA (1.79 CDAS.), en lindes por el NORTE, con camino de uso público, en dos alineaciones distintas que suman sesenta y un metros (61.00); por el SUR, con el lote número cinco (5) en cuatro alineaciones distintas que suman noventa y tres metros con cuatrocientos veintiocho milímetros (93.428); por el ESTE, con parcela de uso público en cincuenta y un metros (51.00) y por el OESTE, con el lote número siete (7) en dos alineaciones distintas que suman ciento catorce metros con cuatrocientos setenta y dos milímetros (114.472)."*

La propiedad adquirida por el apelado colindaba por el este con la finca del Sr. Cosme Alicea y su esposa.

El 11 de octubre de 1995, mediante la Escritura Pública Número 231 sobre Segregación y Compraventa otorgada en dicha fecha en Humacao ante el notario Alfredo Torres Hernández, la apelante adquirió el solar objeto del presente litigio del Sr. Cosme Alicea Delgado y su esposa. La propiedad fue vendida por el precio de $14,000.00, que era el mismo precio convenido por el Sr. Alicea y los esposos Díaz Martínez. Al Sr. Alicea se le pagó el balance de $9,000.00 que había quedado pendiente.

La transacción fue inscrita en el Registro de la Propiedad el 9 de noviembre de 1995, bajo la finca número doce mil seiscientos ochenta y dos (12,682) al folio ciento treinta y tres (133) del tomo doscientos treinta y nueve (239) de la Sección de Humacao.

Posteriormente, la apelante hizo gestiones para obtener una variación de la zonificación de la propiedad.

Según se desprende del récord, el 23 de octubre de 1995 el apelado se enteró extrajudicialmente de la compraventa de la propiedad cuando se lo mencionó un tercero. Cuatro días más tarde, el 27 de octubre de 1995, el apelado instó la presente demanda de retracto al amparo del Art. 1413 del Código Civil, 31 L.P.R.A. sec. 3923, y consignó en el Tribunal de Instancia la suma de $14,000.00, correspondiente al precio de venta de la finca.

Poco después, el 22 de noviembre de 1995, y antes de que la apelante hubiera contestado la demanda de retracto, dicha parte y el Sr. Cosme Alicea Delgado otorgaron la Escritura Pública Núm. 60 ante el Notario Félix Ramos, mediante la cual el Sr. Alicea Delgado segregó de su finca un solar adicional de mil novecientos (1,900) metros cuadrados y se lo vendió a la apelante para que ésta lo agrupara con el solar adquirido previamente y así formar una finca de tres mil cuatrocientos setenta y siete (3,477) metros cuadrados. Esta transacción fue posteriormente sometida al Registro, inscribiéndose la finca resultante bajo el número 12,684 al folio 133 del tomo 239 de Humacao.

Posteriormente, la parte apelante contestó la demanda, negando las alegaciones. Entre otras defensas, planteó que había adquirido la finca antes que el apelado adquiriera la suya, el 29 de julio de 1994, mediante un contrato privado de compraventa, y no mediante la Escritura Núm. 231 la cual había sido otorgada solamente para *"ratificar"* la transacción anterior.

La apelante solicitó, además, la desestimación del caso alegando que la acción de retracto de colindantes era inconstitucional por infringir las garantías del debido proceso de ley y la igual protección de las leyes.

Luego de varios trámites procesales, incluyendo un recurso previo ante este Tribunal, caso Núm. KLCE-96-00188, el apelado presentó una solicitud de interdicto ante el Tribunal de Primera Instancia en la que alegaba que la apelante estaba llevando a cabo obras que alteraban la propiedad y suplicaba que se le ordenara detenerlas y

reponer la finca a su estado original previo a la demanda. El Tribunal de Primera Instancia celebró una vista evidenciaria en torno a esta solicitud. Terminada la vista, ambas partes acordaron someter su caso a base de la prueba desfilada durante la misma.

A base de esta evidencia, el 19 de junio de 1997, el Tribunal emitió la sentencia apelada, declarando con lugar la demanda de retracto.

En su sentencia, la Sala recurrida concluyó que el apelado había dado cumplimiento a los requisitos establecidos por los artículos 1413 y 1414 del Código Civil, 31 L.P.R.A. secs. 3923 y 3924, para llevar a cabo el retracto de colindantes.

El Tribunal observó que la propiedad había sido descrita como una *"rústica"* en la Escritura Núm. 231, y que la misma estaba zonificada A-3, zonificación que no había sido variada a la fecha de la presentación de la demanda. ▇ El foro recurrido también determinó, a base del testimonio del Sr. Cosme Alicea, que *"[l]a finca nunca tuvo otro uso que no fuera agrícola"*.

El Tribunal descartó la contención de la apelante de que la propiedad había sido realmente vendida a la apelante mediante el contrato celebrado en julio de 1994, antes de que el apelado adquiriera su propiedad. Expresó:

*"Según la prueba admitida por el Tribunal no es correcto que la demandada Radio Communication Service and DMC Heavy Equipment Corp. adquiriera la finca objeto del presente retracto mediante contrato celebrado el 29 de julio de 1994. De una lectura de ese contrato surge que la demandante no figuró como parte compradora en el mismo. En el contrato celebrado el 29 de julio de 1994, ante el notario Ángel L. Cintrón Carrasquillo figuraron como "vendedores" el señor Cosme Alicea Delgado y su esposa Carmen Viera y como "compradores" José A. Díaz Rodríguez y Aida L. Martínez García, siendo esta última presidenta de la corporación y única accionista de la corporación demandada, aunque en dicho contrato no compareció en tal calidad."*

Según dicho contrato, lo que la parte vendedora se proponía a vender era un predio de 1,611.46 metros cuadrados equivalente a .41 cuerdas a ser segregadas de una finca de su propiedad.

Dicho predio de 1,611.40 metros no existía como finca. Para proceder a segregarlo se contrató al agrimensor Daniel Rosario.

La venta de dicho predio fue condicionada a que se llevara a cabo tal segregación, previa aprobación de ARPE y a que se pagara la totalidad del precio acordado de $14,000.00, ya que sólo se había pagado $5,000.00 al momento de la celebración del contrato quedando a deber los compradores $9,000.00 que debían ser pagados de la siguiente forma: $5,000.00 cuando el agrimensor Daniel Rosario marcara los puntos del solar y $4,000.00 cuando ARPE aprobara el plano de segregación.

Conforme al testimonio del señor Cosme Alicea, dueño del terreno, a su juicio lo que se otorgó el 29 de julio de 1994 fue un contrato de opción de compra sobre dicho solar. Según Cosme Alicea que fue llevado a declarar por la corporación demandada, él continuaba siendo el dueño del terreno hasta que se aprobara la segregación del mismo y se le pagara el balance adeudado. Cuando se cumplieron tales condiciones, estuvo dispuesto a otorgar las escrituras de compraventa y ceder la titularidad del terreno, lo que se hizo mediante la escritura número 231 otorgada el 11 de octubre de 1995.

El Tribunal declaró con lugar la demanda y ordenó la subrogación del apelado en las mismas condiciones estipuladas en la Escritura Núm. 231. El Tribunal ordenó a la apelante abstenerse de edificar, enajenar o ejercer actos de dominio sobre la propiedad, así como remover cualquier edificación construida luego de la presentación de la demanda. También se decretó la nulidad de la agrupación realizada. El Tribunal impuso a la parte apelante la suma de $10,000.00 por concepto de honorarios de abogado, por temeridad.

La apelante solicitó determinaciones adicionales de hecho, así como la reconsideración de la sentencia, solicitudes que fueron denegadas por el Tribunal. Insatisfecha, la apelante acudió entonces ante este foro.

### III

En su recurso, la apelante plantea la comisión de varios errores por el Tribunal de Primera Instancia, dirigidos a cuestionar la procedencia de la acción de retracto, su constitucionalidad, la expedición de un *injunction* y la imposición de honorarios de abogado.

La apelante plantea que erró el Tribunal al declarar con lugar la demanda de retracto a pesar de que la apelante adquirió su predio el 29 de julio de 1994, casi un año antes que el apelado adquiriera el suyo y que el predio en cuestión no era *"rústico"* en el contexto que este término se emplea en el Art. 1413 del Código Civil.

La figura del retracto de colindantes está regulada por el mencionado Art. 1413 del Código Civil de Puerto Rico. 31 L.P.R.A. sec. 3923. Se trata de un derecho real de adquisición preferente. Quien lo ejerce se subroga en la posición del comprador con las mismas condiciones estipuladas en el contrato de venta. 31 L.P.R.A. sec. 3921; *Santos v. López,* 26 D.P.R. 417 (1918); *González v. Godreau,* 21 D.P.R. 158 (1914).

El propósito de este derecho, proveniente del Art. 1523 del Código Civil Español, es evitar que ocurra el minifundio o la división excesiva de las propiedades rústicas, en detrimento del valor y desarrollo de este tipo de recurso. Manresa y Navarro, *infra,* a la pág. 519.

Para que proceda el retracto de colindantes se requiere: a) que se trate de una finca de naturaleza rústica; b) que no exceda de una hectárea de cabida; ▮ c) que las fincas sean colindantes, no estén separadas por arroyos, acequias, barrancos, caminos y otras servidumbres aparentes en provecho de otras fincas; d) que exista una venta o dación en pago a favor de un extraño; y e) que no medie un retracto de comuneros, pues éste excluye al de colindantes. Véase, 31 L.P.R.A. sec. 3924; véanse, además, Vélez Torres, *Curso de Derecho Civil,* San Juan, P. R., Centro Gráfico del Caribe, Inc., 1992, t. II, págs. 469-470; *Revista de Derecho Privado* (M. Albaladejo y S. Díaz Alabart, directores), *Comentarios al Código Civil y Compilaciones Forales,* 2da Ed., Editorial Revista de Derecho Privado, 1991, Tomo XIX, págs. 663-675; Manresa y Navarro, *Comentarios al Código Civil Español,* Reus, Madrid, 1969, Tomo X, págs. 519-525; J. Puig Brutau, *Fundamentos de Derecho Civil,* Tomo III, Vol. 3, 3ra edición, Bosch, Barcelona, 1983, a las págs. 419-428.

El Art. 1414 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3924, establece que el derecho debe ejercitarse dentro de nueve (9) días contados desde la inscripción en el registro, y *"en su defecto, desde que el retrayente hubiera tenido conocimiento de la venta."*

Este plazo es de caducidad. J. Puig Brutau, *supra,* a la pág. 414; J. Castán Tobeñas, *Derecho Civil Español Común y Foral,* Tomo IV, Reus, Madrid, 1993, pág. 182; *Quiñones Quiñones v. Quiñones Irizarry,* 91 D.P.R. 251-265 (1964).

Para poder interponer una demanda de retracto se requiere, además, que el retrayente consigne el precio de la propiedad. Véase, Art. 1407 del Código Civil, 31 L.P.R.A. sec. 3912; *Quiñones v. Alcaide,* 72 D.P.R. 718, 724

(1951).

En la situación de autos, no existe controversia que al momento del otorgamiento de la Escritura Núm. 231 el 11 de octubre de 1995, el apelado era dueño de una propiedad colindante a la de la apelante y que ejercitó su derecho de retracto dentro de los nueve días de enterarse de dicha transacción, consignando el precio de venta en el Tribunal.

La apelante plantea, sin embargo, que la transacción del 11 de octubre de 1995 sólo constituyó una *"ratificación"* del negocio anterior de compraventa celebrado entre las partes el 29 de julio de 1994, cuando el apelado todavía no era el titular de la propiedad. Alega que, en estas circunstancias, no procede el ejercicio del retracto.

El Tribunal de Primera Instancia, según hemos visto, entendió que el negocio del 29 de julio de 1994 no podía considerarse una compraventa, porque estaba sujeto a que se aprobara la segregación de la propiedad, cuya descripción y cabida fue modificada luego de la mensura. También observó que la apelante no había comparecido en dicho negocio, sino que éste se había llevado a cabo a nombre de los esposos Díaz Martínez en su carácter personal y que el propio vendedor había entendido que él había continuado siendo el dueño hasta la transacción de octubre de 1995.

La doctrina española, formulada en torno a los retractos de comuneros es que *"el retracto sólo puede aprovecharse cuando la venta está consumada, esto es, cuando el vendedor ha transmitido al comprador el dominio con la posesión de la cosa mediante la tradición real o simbólica siendo necesario no sólo una operación de compraventa, sino una verdadera y consumada adquisición del dominio por parte del tercero..., pues la simple promesa de venta, aún aceptada, que no produce efectos transmisivos, sino obligatorios, sólo da lugar a un derecho expectante."* Supra, a la pág. 410. Entendemos que estas normas son aplicables a los retractos de colindantes. *Id.*, a la pág. 429.

En la situación de autos, no consideramos que el Tribunal de Primera Instancia hubiera abusado de su discreción al rechazar la contención de la apelante de que había adquirido la propiedad el 29 de julio de 1994. Creemos que, a base del récord, dicho Tribunal podía razonablemente concluir que dicha transacción no había tenido un efecto traslativo de dominio, sino que constituia un precontrato o promesa de venta con efecto personal. Véase, 31 L.P.R.A. sec. 37471; *Soto Vázquez v. Rivera Alvarado,* ___ D.P.R. ___ (1997), **97 J.T.S. 145,** a la pág. 365; *Jordán-Rojas v. Padró González,* 103 D.P.R. 813, 817 (1975); véanse, además, José Puig Brutau, *Fundamentos de Derecho Civil,* Tomo II, Vol. 2, 2da edición, Bosch, Barcelona, 1982, a las págs. 1-5; Manuel Albaladejo, *Derecho Civil,* Tomo II, Vol. I, 2da edición, Bosch, Barcelona, 1975, a las págs. 362-367; Bernardo Moreno Quesada, *La Oferta de Contrato,* Barcelona, 1963, págs. 24-26.

Obsérvese que el negocio de 1994 fue celebrado mediante escritura privada, contrario a lo requerido por el Art. 1232 del Código Civil para negocios que *"tengan por objeto la creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles."* 31 L.P.R.A. sec. 3453. Su fecha, por lo tanto, no resultaba oponible al apelado, según el Art. 1181 del Código Civil, 31 L.P.R.A. sec. 3282.

Más aún, según señalara el Tribunal de Primera Instancia, la segregación de la propiedad no había sido aprobada, dependiendo la legalidad de la transacción de dicho trámite. *Preciosas Vistas del Lago v. Registrador,* 110 D.P.R. 802, 811-812 (1981); *Meléndez v. Jiménez Realty, Inc.,* 98 D.P.R. 892, 897 (1970). Tampoco el mismo fue otorgado a nombre de la apelada, sino que los esposos Díaz Martínez comparecieron en su carácter personal.

La norma en nuestra jurisdicción es que un tribunal apelativo no intervendrá con la apreciación que de la prueba desfilada haya hecho el Tribunal de Instancia en ausencia error manifiesto, pasión, prejuicio o parcialidad. Regla 43.2 de las de Procedimiento Civil. Véanse, *Méndez de Rodríguez v. Morales Molina*, ___ D. P.R. ___ (1996), **96 J.T.S. 149,** a la pág. 347; *Cándido Oliveras, Inc. v. Universal Insurance Company*, ___ D.P. R. ___ (1996), **96 J.T.S. 145**, a la pág. 298; *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8, 14 (1987); véase, además, 32 L.P.R.A. Ap. III, R. 43.2.

En la situación de autos, carecemos de elementos de juicio para sustituir el criterio del foro de Primera Instancia.

En cualquier caso, aun si pudiera admitirse la contención de la apelante, lo cierto es que el negocio llevado a cabo mediante escritura privada no fue elevado a escritura pública ni conocido por el apelado sino hasta octubre de 1995. Para esa fecha el apelado ya era dueño del predio colindante, por lo que indudablemente tenía derecho a ejercitar el retracto.

La parte apelante plantea que la acción de retracto resultaba improcedente porque la finca no era rústica.

La cualidad de rústica de la finca se fija al momento de la perfección del contrato. Revista de Derecho Privado, *supra*, a la pág. 666; Manresa y Navarro, *supra*, a la pág. 527.

Se trata más bien de una cuestión de hecho. *Quiñones v. Alcaide*, 72 D.P.R. a la pág. 726; Revista de Derecho Privado, *supra*, a la pág. 665.

En *Quiñones v. Alcaide, supra*, el Tribunal Supremo de Puerto Rico estableció que es más bien la naturaleza predominante a que se dedica la finca lo que determina su condición. 72 D.P.R. a la pág. 726. [3] En términos generales, señala Puig Brutau, son fincas rústicas las que no están edificadas y son urbanas las que lo están. J. Puig Brutau, *Compendio de Derecho Civil*, Bosch, Barcelona, 1989, Vol. III, pág. 369; véase, además, *Quiñones v. Alcaide*, 72 D.P.R. a la pág. 726.

Otros comentaristas añaden que se tendrá en cuenta para decidir sobre la calificación, la situación o emplazamiento del predio en el campo o en la población y el aprovechamiento o destino (explotación agrícola, pecuaria o forestal, frente a vivienda, industria o comercio). si ambos elementos coexisten, se atenderá a la preponderancia de uno de éstos o la relación de dependencia que entre ellos exista. Revista de Derecho Privado, *supra*, pág. 665; Manresa y Navarro, *supra*, a la pág. 520.

En la situación de autos, el Tribunal de Primera Instancia encontró que el predio en cuestión estaba categorizado como "*A-3*" por la Junta de Planificación al momento de su retracto, que el historial de la finca revelaba que había sido dedicada predominantemente a usos agrícolas, y que la finca había sido caracterizada como rústica en la propia Escritura Pública Núm. 231.

En estas circunstancias, declinamos intervenir con la determinación del Tribunal.

La parte apelante cuestiona la constitucionalidad de la acción de retracto establecida por el Art. 1413 del Código Civil, alegando que esta disposición está reñida con las garantías constitucionales del debido procedimiento de ley y la igual protección de la leyes establecidas por el Art. II, Sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico.

La Asamblea Legislativa, según se conoce, goza de amplia facultad para, en el ejercicio de su poder de razón

de estado *("police power"),* aprobar reglamentación económica dirigida a promover el bienestar de la comunidad. *Defendini Collazo v. Estado Libre Asociado,* ___ D.P.R. ___, (1993), **93 J.T.S. 119**, a la pág. 11011; *Marina Ind. Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64, 80 (1983).

Para examinar la validez de una reglamentación económica frente a un reclamo amparado en la garantía del debido proceso de ley en su modalidad sustantiva, **[4]** la jurisprudencia del Tribunal Supremo de Puerto Rico ha adoptado un *"escrutinio de razonabilidad". Marina Ind. Inc. v. Brown Boveri Corp.,* 114 D.P.R. a la pág. 80.

Bajo el mismo, la reglamentación impugnada se presume constitucional y el peso de la prueba recae sobre la parte que impugna su validez constitucional para establecer que la misma no guarda conexión con objetivo legítimo alguno del estado.

Este escrutinio, por lo tanto, requiere: a) identificar el objetivo que persigue la reglamentación; b) determinar si tal objetivo es uno legítimo del Estado; y c) evaluar la relación entre los objetivos que persigue la reglamentación y los medios que el Estado emplea para lograr dichos objetivos. *Defendini Collazo v. Estado Libre Asociado,* ___ D.P.R. ___ (1993), **93 J.T.S. 119**, a la pág. 11011; *Vélez Reboyras v. Srio. de Justicia,* 115 D.P.R. 533, 538 (1984); *Marina Ind. Inc. v. Brown Boveri Corp.,* 114 D.P.R. a la pág. 80 (1983).

En la situación de autos, según mencionado, el derecho de retracto persigue evitar la dispersión de terrenos y la creación de minifundios, en detrimento del valor de dicho recurso. Toda vez que éste es sin duda un fin legítimo para el estado y que el comprador es reembolsado en el precio de la cosa pagado por él, no percibimos vicio alguno constitucional. En cuanto a la cláusula de la igual protección de las leyes, se ha reconocido que la misma no exige un trato igual para todos los ciudadanos, pero prohibe un trato desigual injustificado. *M.& B.S., Inc. v. Depto. de Agricultura,* 118 D.P.R. 319, 332 (1987).

Cuando se trata de una clasificación establecida por una reglamentación de carácter económico, se utiliza un escrutinio mínimo, similar al empleado bajo la cláusula de debido proceso. Una clasificación de esta naturaleza no debe ser invalidada, a menos que sea claramente arbitraria y no pueda establecerse nexo racional alguno entre la misma y un interés legítimo del Estado. *Disidente Universal de P.R. Inc. v. Depto. de Estado,* ___ D.P.R. ___, (1998), **98 J.T.S. 68**, a las págs. 1010-1011; *M.& B.S., Inc. v. Depto. de Agricultura,* 118 D.P.R. 319, 333 (1987); *Vélez Reboyras v. Srio. de Justicia,* 115 D.P.R. 533, 538 (1984); *Marina Ind. Inc. v. Brown Boveri Corp.,* 114 D.P.R. a la pág. 80.

Procede, igualmente, denegar el planteamiento de la apelante.

La apelante alega que el foro de Primera Instancia descansó en un proyecto de sentencia preparado ex-parte por la representación legal del apelado.

No hay base en el récord, sin embargo, para esta aseveración, la que corresponde más bien a una impresión de la representación legal de la apelante. En cualquier caso, la utilización de un proyecto de sentencia, de por sí, no sería inválida. *Román Cruz v. Díaz Rifas,* 113 D.P.R. 500, 508 (1982); *Malavé v. Hosp. de la Concepción,* 100 D.P.R. 55, 56 (1971). Toda vez que hemos determinado que la decisión del Tribunal fue correcta a la luz del récord, resolvemos que este error tampoco fue cometido. Véanse, *Báez García v. Cooper Labs Inc.,* 120 D.P.R. 145, 157 (1987); *Arroyo v. Rattan Specialties,* 117 D.P.R. 35, 42 (1987); *Malavé v. Hosp. de la Concepción,* 100 D.P.R. a las págs. 56-57.

La apelante se queja de que el Tribunal emitió un *injunction* ordenándole reponer la propiedad a su condición original a la fecha de la demanda de retracto y que dicho foro ordenó la cancelación de la inscripción

de agrupación de los predios realizada por la apelante. Dichos remedios, a nuestro juicio, resultan apropiados y son una consecuencia del dictamen del Tribunal adjudicando el título de la propiedad al apelado.

Finalmente, la apelante plantea que erró el Tribunal de Primera Instancia al imponerle honorarios de abogados por temeridad.

El propósito de la imposición de honorarios de abogado es el de sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a asumir innecesariamente las molestias, gastos, trabajo e inconveniencias de un pleito. Véanse, *Fernández v. S.J. Cement Co. Inc.*, 118 D.P.R. 713, 718 (1987); *Soto v. Lugo,* 76 D.P.R. 444, 448 (1954).

El Tribunal Supremo de Puerto Rico ha expresado que la acción que amerita la imposición de honorarios de abogados es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. Véase, *Fernández v. S.J. Cement Co. Inc.,* 118 D.P.R. a las págs. 718-719.

El Tribunal de Primera Instancia goza de amplia discreción en este tipo de determinaciones. Véanse, *Miranda v. Estado Libre Asociado,* ___ D.P.R. ___ (1994), **94 J.T.S. 152,** a la pág. 527; *Ramírez v. Club Cala de Palmas,* 123 D.P.R. 339, 349 (1949); *Fernández v. S.J. Cement Co. Inc.,* 118 D.P.R. a la pág. 717; *Raluán Corp. v. Feliciano,* 111 D.P.R. 598, 601-602 (1981).

En el caso de autos, consideramos que el Tribunal de Primera Instancia no abusó de su discreción al determinar que la parte apelante había actuado con temeridad al litigar el derecho de retracto del apelado, a base de argumentos carentes de substancia.

Por los fundamentos antes expresados se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 109

**1.** Aparentemente, dicha zonificación se varió después, conforme había sido solicitado por la apelante.

**2.** Una hectárea resulta ser un poco más de 2 1/2 cuerdas.

**3.** Previamente, el Tribunal Supremo había resuelto que una parcela de terreno, usada principalmente para fines agrícolas, no perdía su naturaleza rústica por haberse establecido en ella una vía de ferrocarril para fines comerciales. *González v. Ortiz,* 28 D.P.R. 797, 799 (1920).

**4.** Como se sabe, la garantía del debido proceso de ley opera en dos dimensiones distintas: la procesal y la sustantiva. La vertiente sustantiva del debido proceso de ley persigue proteger y salvaguardar los derechos fundamentales de la persona. La vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Unión Independiente de Empleados de la Autoridad de Edificios Públicos v. Autoridad de Edificios Públicos,* ___ D.P.R. ___ , (1998), **98 J.T.S. 111,** a la pág 51; *Rivera Rodríguez v. Stowell Taylor,* ___ D.P.R. ___, (1993), **93 J.T.S. 111,** a la pág. 10931; *Rodríguez Rodríguez v. E.L.A.,* 130 D.P.R. 562, 574-576 (1992).