**IN THE COURT OF APPEALS OF TENNESSEE**
**AT NASHVILLE**
**October 8, 2002 Session**

**CATHERINE A. HOBACK v. GLENN D. HOBACK**

**Appeal from the Circuit Court for Davidson County**
**No. 00D-366,     Marietta Shipley, Judge**

─────────────────────────────────────

**No.  M2001-01913-COA-R3-CV - Filed April 5, 2004**
─────────────────────────────────────

The issues on appeal in this divorce action are: (1) Whether the trial court erred in awarding alimony in futuro; (2) Whether the trial court was in error in finding wife's IRA of Wal-mart stock was her separate property in its entirety; (3) Whether the trial court erred in failing to make a downward deviation in child support.

The trial court awarded to Ms. Hoback as alimony in futuro $500 per month for a ten (10) year period terminating on her death or her remarriage.  Wal-mart stock of value of approximately $35,000 was awarded to Ms. Hoback as her separate property.  Child support was set at $750 per month upon a finding of ability of the father to earn $60,000 per year, and based upon additional parenting time above 80 days per year granted to the father the Court reduced the month of June child support to $550 and reduced the month of July support to $375 making a downward deviation of $47.92 per month.  For reasons stated below, the trial court is affirmed.

**Tenn.R.App.P.3 Appeal as of Right; Judgment of the Circuit Court for Davidson County**
**Affirmed and Remanded**

TOM E. GRAY, Sp.J. delivered the opinion of the Court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM B. CAIN, J. joined.

George M. Allen, Brentwood, TN, for the appellant, Glenn D. Hoback.

Sandra Jones, Nashville, TN, for the appellee, Catherine D. Hoback.

**OPINION**

Glenn D. Hoback and Catherine Akersloot were married on the 7th day of February, 1991 in Montgomery County, Tennessee.  One child, Charles Davis Hoback, was born to this union on the 21st day of November, 1992.

On the 10th day of February, 2000, Catherine Akersloot Hoback filed a complaint for

divorce; Glenn D. Hoback filed an answer and counter-complaint on the 25th day of February, 2000. The case was tried for two days in the Second Circuit Court for Davidson County, Tennessee at Nashville.

Contested issues at trial included the award of the divorce, the determination and award of separate property of the parties, the determination of the marital estate, the equitable division of the marital estate, the determination and assignment of marital debts, whether there would be an award of any spousal support and the parenting plan for the parties' minor child. Having heard the testimony of the parties and witnesses the trial court at the conclusion of the proof declared the parties divorced pursuant to T.C.A. 36-4-129. No issue is made of the granting of the divorce and having viewed the video tapes of the trial it was appropriate to find that both parties were responsible for the demise of the marriage and to utilize T.C.A. 36-4-129.

## STANDARD OF REVIEW

Review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding unless the preponderance of evidence is otherwise or otherwise required by statute. Tenn.R.App.P. 13(d)

Questions of law are reviewed de novo with no presumption of correctness. Murdock Acceptance Corp. v. Jones 362 S.W. 2d 266, 268 (Tenn.Ct. App. 1961).

There is great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal. Aaron v. Aaron 909 S.W. 2nd 408, 410 (Tenn. 1995).

## ANALYSIS

### A.      Alimony in futuro

The trial court awarded Catherine A. Hoback $500 per month to be paid by Glenn D. Hoback as alimony in futuro for ten (10) years to terminate upon her death or remarriage. In making the award of alimony the trial judge stated:

> We have to deal with the practical facts, Mrs. Hoback was the
> primary caretaker of this child. What that means is that both of
> you decided that she would stay at home for a long period of time;
> and where if in her career, she had been earning $20,000 in 1991,
> one can assume that she would be earning much more than $20,000
> at this particular time, just as you have. She has not gone that
> route. She has been the "neighborhood mother." That is a fact of
> life; that's what she did. She was the one to take the child to the

doctor's appointments, fix the dinners, see that things were as they should be. That is the way that you divided up the responsibility and duty in your family and it makes sense that she would continue with that... TAPE II, 1-30-01; 05:30:30

Now the bigger problem is how these two families are going to survive financially. I've gone through both of your income and expense sheets and the only way that I see that Mrs. Hoback can remain in the house is if she doesn't pay interest on her loans, otherwise she will have to move... I have considered that she should receive $500 per month as alimony in futuro for ten (10) years, her death or remarriage. Now that gives her about $3,200 per month... and that leaves Mr. Hoback with his present net income as listed on the exhibit, of $2,440, but he is paying considerably less now than he was... he was paying in excess of $2,000 per month and now he will be paying $1,250... TAPE II, 1-30-01; 05:44:40

The Court found that the parties made a decision that the mother/wife would focus on the personal side of the marriage, that is, she would remain at home to provide care and nurture for the children. The husband/father would focus on building the economic strength of the family. As a result the Court considered that the wife/mother had suffered economic detriment because she had not gone the route of continuing to work outside the home building on the income she was earning in 1991 when she gave up her job to be a homemaker. Rehabilitative alimony was not feasible in consideration of the relevant factors so the Court granted support for a ten (10) year period.

With the earnings of the husband/father the parties enjoyed an above average standard of living. The trial judge considered the income and expense statement of the wife which showed expenses of $4,871 per month and income of net earnings of $1,598.75 per month and child support for daughter of $350 per month for a total of $1,248.75, with a need of $3,622.25. Based on husband's income, there was ability to pay spousal support of $500 per month..

The Tennessee Supreme Court in Aaron v. Aaron at 909 S.W.2d 408 (Tenn. 1995) at page 411 stated, "While alimony is not intended to provide a former spouse with relative financial ease, we stress that alimony should be awarded in such a way that the spouse's approach equity."

No error is found in the award of alimony in futuro by the trial court.

**B. Appreciation of wife's IRA account.**

Glen D. Hoback contends that the increase in value of the wife's Individual Retirement

Account is marital property by law and that he is entitled to one-half (½) of the appreciation. He claims error by the trial judge in not making award to him of some of the growth of this fund.

The parties do not dispute that Catherine A. Hoback brought into the marriage funds from a marital retirement account awarded to her from her first marriage. The record of testimony and exhibit two (2) at trial shows $14,473.61 was received by J.J.B. Hilliard, W.L. Lyons, Inc. as custodian for Catherine A. Hoback Individual Retirement Account and that $14,438.61 was placed in a money market account and $35.00 paid as annual fee. Exhibit two (2) shows that the $14,438.61 in the money market fund was used to buy equivalent fund. In other words, investment was made. The money market fund buy was the 23rd day of September, 1993.

Appellant Glen D. Hoback asserts that the wife did not document the value of the retirement account on the date of the marriage, but did establish that in September of 1993, two years into the marriage, its value was $14,438.61. Wife does not dispute.

As of the date of the trial the value was between $32,000 and $35,000 TAPE I 1/29/01; 1:05-1:10 p.

Both parties testified that the IRA is Wal-mart stock. It is the only IRA in wife's name.

It is not disputed that the wife never placed the husband's name on the account and that neither made any financial contribution to the fund during the marriage. No monies earned by the wife from employment outside the home were contributed to the IRA. All funds used to purchase the Wal-mart stock IRA were pre-marital money.

There is no evidence that the husband made any contributions, substantial or otherwise, to the preservation and appreciation in value of the wife's IRA.

The appreciation in value of the Wal-mart sock has been entirely market driven.

Langschmidt v. Langschmidt 81 S.W. 3d 741 (Tenn. 2002) addresses whether a pre-marital IRA is a retirement benefit under Tennessee Code Ann. § 36-4-121(b)(1)(B). At pages 749 - 750, Langschmidt (supra) the Supreme Court stated:

> We find, however, that Husband's pre-marital IRAs are not retirement benefits under Tenn.Code Ann. § 36-4-121(b)(1)(B). Prior decisions of this Court support this conclusion. In *Cohen*, this Court held that unvested pension benefits accrued during the marriage are marital property, even though the statute only expressly designated accrued "vested" pension benefits to be marital property. In so holding, we noted that
>
> > [t]o the extent earned during the marriage, the benefits represent compensation for marital effort and are substitutes for current earnings which would have increased

4

the marital standard of living or would have been converted into other assets divisible at dissolution ....[R]etirement benefits have been described as part of the consideration earned by an employee, [] and as a form of deferred compensation provided by the employer for work already performed.

*Cohen*, 937 S.W.2d at 828-29 (citations omitted).  Unlike the accrual of vested or unvested pension during the marriage, Husband's IRAs in this case do not represent deferred compensation during the marriage, but were funded with premarital assets.  In *Gragg*, this Court held that disability benefits do not represent deferred compensation earned during the marriage, but "replace income which is lost before retirement," and therefore, were not marital property absent a showing "that a portion of a spouse's 'disability benefits' is actually representative of retirement benefits."  *Gragg*, 12 S.W.3rd at 418.  We noted that "[s]ince the future income of each spouse is not classified as marital property, disability benefits which replace future income should not be classified as marital property." *id.*  Similarly, assets owned by a spouse before marriage are not marital property.  See Tenn. Code Ann. § 36-4-121(b)(2)(a).  Since Husband's IRAs do not represent deferred marital compensation, but were funded with premarital earnings (except for the value of the 401(k) rollover), we conclude that Husband's premarital IRAs are not retirement benefits under Tenn. Code Ann. § 36-4-121(b)(1)(B)

The trial court did not err in awarding the IRA to the wife as her separate property.

**C.**     **Downward deviation from child support guidelines based upon increased parenting time with the minor child.**

Determination of the best interest of the parties' minor child as to the primary residential parent and the parenting time by the other parent was always an issue in this case for the trial court.  The mother was named as the primary residential parent, and the court awarded the father more than eighty (80) days of parenting time.  No issue has been made on appeal regarding the parenting plan ordered by the trial court except the assertion that the Court committed error by failing to deviate downward from the child support guidelines.

In setting the child support the most important element of proof is determining the amount of income of the non-primary residential parent.  Turner v. Turner 919 S.W. 2d 340 (Tenn. App. 1995).

The judge found that the father had the ability to earn $60,000 per year and this figure is supported by the evidence.  In 1998 the annual income of the father increased significantly. From 1995 through 1997 he had an average income of $36,556; in 1998 his gross income was $55,910 and in 1999 he earned $76,065.

5

T.C.A. 36-5-101(e)(1)(A) provides:

> In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttal presumption the child support guidelines as provided in this subsection. If the court finds the evidence is sufficient to rebut the presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Finding that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

Having determined the average gross annual income of the appellant, Glenn D. Hoback, to be $60,000 for the purpose of setting child support the trial court utilized the Tennessee Guidelines and determined that the minimum child support obligation of the father to be $750 per month. Awarding the father more parenting time than the standard 80 days per year the trial judge made a downward deviation of $575 annually. The permanent parenting plan entered provided that the father pay financial support for the parties' minor child at $375 twice per month except in June when the father would pay a total monthly payment of $550 and in July a total monthly payment of $375.

Unlike upward deviation the Tennessee Child Support Guidelines do not command a downward deviation. The guidelines provide that since the percentage awards are minimum the court shall increase child support if overnight parenting time is less than 80 days per year, but if parenting of the obligor is more than 80 days the Court may consider a downward deviation. Chapter 1240-2-4 Child Support Guidelines.

> If the child(ren) is/are not staying overnight with the obligor for the average visitation period of every other weekend from Friday evening to Sunday evening, two weeks during the summer and two weeks during holiday periods throughout the year, then an amount shall be added to the percentage calculated in the above rule to compensate the obligee for the cost of providing care of the child(ren) for the amount of time the average visitation period that the child(ren) is/are not with the obligor. reference 1240-2-4.02(6) The court may consider a downward deviation from the guidelines if the obligor demonstrates that he/she is consistently providing more care and supervision for the children than contemplated in the rule. Tenn. Comp. R. & Regs Tit. 10, Ch. 1240-2-4-.04(1)(B).

In making deviation the court is required by the guidelines to give primary consideration

to the best interest of the child(ren) for whom support the guidelines are being utilized. Tenn. Comp. R. & Regs. Tit. 10, Ch. 1240-2-4-04(5).

The trial court made a downward deviation in this case.

## CONCLUSION

The judgment of the trial court is affirmed and this case is remanded. Each party shall be responsible for his/her attorney fees with costs on appeal taxed to Glenn D. Hoback.

 

_____
Tom E. Gray, Special Judge